UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, ANTITRUST DIVISION,<br><br>Defendant. | Civil Action 09-00157 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff") filed this action against the U.S. Department of Justice, Antitrust Division ("Division" or "Agency") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking records related to requests for leniency under the Division's investigation of anticompetitive practices in the sale of municipal derivatives products. Before the Court is the Agency's motion for summary judgment [#9], in which the Agency argues that it has complied with Lieff's FOIA request to the extent required by law. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion should be granted in part and denied in part.

### I. BACKGROUND

**A.     The Freedom of Information Act**

FOIA generally allows any person to obtain access to federal agency records, subject to certain specified exceptions. 5 U.S.C. § 552(a), (b). Congress enacted FOIA to "set[] forth a policy of broad disclosure of Government documents in order to ensure 'an informed citizenry,

vital to the functioning of a democratic society.'" *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)) (alteration in original). Although Congress acknowledged that information requests may impose burdens upon government agencies, it decided that the "ultimate policy of open government should take precedence." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citations omitted).

In response to a FOIA request, an agency must "conduct[] a search reasonably calculated to uncover all relevant documents." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotation marks omitted). If a requester's suit challenges an agency's invocation of exemptions to its disclosure obligation, the agency must justify its reliance on those exemptions through the submission to the court of a so-called "*Vaughn* index," affidavits or declarations, or both, containing a detailed description of the information withheld. *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009); *see also Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir 1973).[1]

**B.    Factual Background**

Municipalities sometimes raise funds by issuing bonds. In some cases, those municipalities invest the money generated by bonds in derivative products, which produce

---

[1] A *Vaughn* index "must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson v. Executive Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002). "[T]he precise form of the agency's submission—whether it be an index, a detailed declaration, or a narrative—is immaterial." *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28, 34 (D.D.C. 2007) (citing *Gallant v. Nat'l Labor Relations Bd.*, 26 F.3d 168, 173 (D.C. Cir. 1994)).

2

income over time. The Division instigated an investigation into the industry that sells these municipal derivative products because it suspected that its participants were engaging in illegal anticompetitive behavior.

Bank of America ("Bank"), which provides derivative products to municipalities, publicly announced in February 2007 that it was an applicant to the Division's Corporate Leniency Program in connection with the investigation of the municipal derivatives industry. This program permits a corporation that has taken part in antitrust violations to receive lenient treatment from the Division in exchange for assisting with an investigation of wrongdoing in that corporation's industry.[2] The Bank's announcement stated only that it would likely participate in the Leniency Program; it did not make public any details about the information the Bank provided to the Division. In keeping with its practice of protecting the confidentiality of participants in the Leniency Program, the Division itself has likewise not made those details public.

On August 5, 2008, Lieff submitted a FOIA request to the Division seeking documents related to requests for leniency, including such requests by the Bank, connected to the Division's investigation of the sale of municipal derivative products.[3] Three days later, the Division

---

[2] The Division explains that antitrust violations occur amongst groups of coconspirators in a secretive manner. The Corporate Leniency Program encourages members of cartels engaged in illegal activity to provide information to the Division regarding anticompetitive behavior that is otherwise difficult to obtain.

[3] Lieff, a law firm, has an interest in these documents because it represents "four plaintiffs in litigation involving anticompetitive practices in the sale of municipal derivatives." Compl. ¶ 3.

responded with a letter stating that it could "neither confirm nor deny the existence of any records responsive to [Lieff's] request." Def.'s Mot. for Summ. J., Ex. F at 1.

On January 28, 2009, Lieff filed this action to obtain the records it had requested.[4] About a month later, Lieff and the Division came to an agreement narrowing the scope of Lieff's request. Lieff now seeks:

> (1) The Corporate Conditional Leniency Letter, including any attachments or enclosures, or any other document exchanged between [the Bank] and [the Agency] memorializing any agreement between [the Bank] and [the Agency] in connection with [the Agency]'s investigation into anticompetitive practices in the sale of municipal derivatives, including drafts of such documents, as well as any correspondence on or before December 31, 2008 between [the Bank] and [the Agency], that requests, responds to a request for, or concerns such a request for or response to such a request for, leniency or a determination on whether the government will grant or deny leniency under the Antitrust Divisions' Corporate Leniency Policy.
>
> (2) Correspondence on or before August 6, 2008 between any entity, other than [the Bank], and [the Agency] in connection with [the Agency]'s investigation into anticompetitive practices in the sale of municipal derivatives, that requests, or responds to a request for, leniency or a determination on whether the government will grant or deny leniency under the Antitrust Division's Corporate Leniency Policy, as well as any additional correspondence concerning such a request or response.

Def.'s Mot. for Summ. J., Ex. I at 2.

In response to this modified request, the Agency conducted a search for responsive records. It located (1) an unspecified number of records that are correspondence between the Bank and the Division regarding the Bank's request for leniency ("correspondence"); (2) the

---

[4] The parties agree that Lieff had exhausted its administrative remedies by that date and could therefore properly sue in federal court.

conditional leniency letter between the Bank and the Division ("Leniency Letter")[5]; and (3) a document describing the Division's Corporate Leniency Policy. The Division provided Lieff only the Corporate Leniency Policy document, which was already available on the internet, claiming that FOIA exemptions allowed withholding the correspondence and Leniency Letter. In addition, the Division declined to confirm or deny whether it had identified any records responsive to the second part of Lieff's request, which sought correspondence concerning requests for leniency in the municipal derivatives investigation between the Division and any entity other than the Bank.

The Agency has moved for summary judgment, attaching, *inter alia*, a declaration of Sue Ann Slates, the Division's Chief of the Freedom of Information Act/Privacy Act Unit, which explains its decision to withhold documents in full and to decline to confirm or deny the existence of other responsive records ("Slates Decl.").

## II. LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In a FOIA action challenging the withholding of records or portions of records, an agency is entitled to summary judgment if the court determines that the agency has "sustained [its] burden of demonstrating that the withheld documents are exempt from disclosure" under the statute. *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 385 (D.C. Cir. 2007) (citing *Johnson*, 310 F.3d at 774; *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)).

---

[5] The Division also located a nearly identical, earlier draft of this letter.

Congress set forth nine exemptions to FOIA under which an agency may properly withhold information, *see* 5 U.S.C. § 552(a)(4)(B), (b)(1)-(9), out of concern that "legitimate governmental and private interests could be harmed by release of certain types of information," *FBI v. Abramson*, 456 U.S. 615, 621 (1982). The agency bears the burden of justifying its decision to withhold requested documents. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). An agency's declaration explaining its withholdings is sufficient to support a claimed exemption if it: (1) is not conclusory; (2) describes the justification for withholding the requested records "in sufficient detail to demonstrate that the claimed exemption applies," *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987); and (3) is neither controverted by evidence in the record nor by evidence of agency bad faith, *Shaw v. U.S. Dep't of State*, 559 F. Supp. 1053, 1056 (D.D.C. 1983) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). If the declarations or affidavits meet these standards, "then the court need not question [the submissions'] veracity and must accord them substantial weight in its decision." *Schlesinger v. CIA*, 591 F. Supp. 60, 64 (D.D.C. 1984) (citing *Taylor v. Dep't of the Army*, 684 F.2d 99, 106-07 (D.C. Cir. 1982)).

### III. ANALYSIS

The Agency seeks judgment in its favor, arguing that it has fully complied with its obligations under FOIA in response to Lieff's request. The only questions before the Court involve the propriety of the Agency's withholding of records it located and its refusal to confirm or deny the existence of other responsive records.[6]

---

[6] The Agency argues, and Lieff concedes, that the Division's search for records responsive to the FOIA request at issue was adequate.

A.     **Correspondence Between the Division and the Bank, Including the Leniency Letter**

1.     **Exemption 7(A)**

The Agency has invoked FOIA exemption 7(A),[7] which permits an agency not to disclose "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). An agency has properly invoked this exemption if it demonstrates "that release of the requested information would reveal 'the size, scope and direction of [the] investigation' and thereby 'allow for the destruction or alteration of relevant evidence, and the fabrication of fraudulent alibis.'" *Boyd*, 475 F.3d at 386 (quoting *Alyeska Pipeline Serv. Co. v. U.S. Envtl. Prot. Agency*, 856 F.2d 309, 312 (D.C. Cir. 1988)) (alteration in original).

The Division argues that it properly withheld all correspondence between the Bank and itself, including the Leniency Letter, based on this exemption. It asserts that release of the correspondence would likely cause harm by providing useful information to participants in the cartel engaging in anticompetitive behavior in the municipal derivatives market. In particular, the Agency maintains that names in the documents would reveal the identity of potential witnesses; the dates of the correspondence would provide information about the timing of the Bank's cooperation; the letterhead of the law firms that represented the Banks at different times would similarly reveal information about when evidence was provided to the Division; and even

---

[7]     The Division also asserts that it can rely on exemptions 7(D) and 7(C) to justify withholdings in this case. Because the Court will permit the Agency to withhold information in this category of records based on exemption 7(A), this opinion need not address these alternative arguments.

7

revealing the number of pages of correspondence would permit inferences about how much evidence the Division has received and how far along it is in its investigation. Def.'s Mot. for Summ. J. at 19 (quoting Slates Decl. ¶ 58). The Division explains that members of the cartel could use this information to, among other things, discern the scope and direction of the Division's investigation, determine what evidence cartel participants could destroy to interfere with the investigation, and harass or intimidate potential witnesses. *Id.* at 17-18 (citing Slates Decl. ¶ 57). Similarly, the Division asserts that the Leniency Letter identifies the specific practices, business units, and financial products it is investigating, the identities of Bank employee(s) with whom it is communicating, and other information that would also, if revealed, allow interference with its investigation. *Id.* at 19 (citing Slates Decl. ¶ 61).

Lieff replies that exemption 7(A) does not apply because disclosure of the requested records would not interfere with the Division's investigation. Lieff argues that because (1) the Division has made public that an investigation into the municipal derivatives industry is ongoing and (2) the Bank has made public that it has entered into a leniency agreement with the Division, the cartel members already have incentive to thwart the investigation. In addition, Lieff asserts that some details of the investigation have been revealed. Specifically, Lieff notes that the Bank has provided relevant information to civil plaintiffs bringing a related class action suit against it, more than thirty other companies have received subpoenas as part of the Division's investigation, and information about the investigation as well as the identities of potential witnesses has been disclosed in media reports.

The Division rejoins that disclosure of the correspondence would reveal information that is not public, such as "the specific information that [the Bank] has provided to the Division,"

"the specific types of products that the Division believes [the Bank] to have sold in violation of federal antitrust laws," "the specific business units/units of [the Bank] that is/are being investigated by the Division," and "the identity/identities of the [Bank] employee/employees with whom the Division has been communicating." Def.'s Reply to Pl.'s Opp'n at 4 (citing Slates Decl. ¶¶ 51, 57, 61).

The Court concludes that the Division has properly relied on exemption 7(A). The Slates Declaration identifies the particular investigation and prospective law enforcement proceedings that could be put at risk. The D.C. Circuit has previously held that the withholding of information about an investigation, even where the fact that the investigation was ongoing was known, was appropriate because the disclosure of particular documents could provide details about the "particular types of allegedly illegal activities being investigated" as well as the names of potential witnesses, who would then be "less likely to cooperate fully with the [investigating agency]." *Alyeska Pipeline Serv. Co.*, 856 F.2d at 312. The Division seeks to protect precisely such types of information here. And the Slates Declaration explains with adequate specificity the interference with the municipal derivatives investigation that could result from the disclosure of information in the correspondence and letter at issue. *Cf. id.* ("[W]e have realized that it is not enough for an agency to shore up its exemption claim merely with general and conclusory statements regarding the effect of disclosure.").

Furthermore, Lieff's argument that the disclosure through other means of information about the investigation negates the Division's ability to properly invoke this exemption fails. Although Lieff has not cited any law to support its position, the Court notes that the D.C. Circuit has held that "[u]nder our public-domain doctrine, materials normally immunized from

9

disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (citations omitted). But "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)) (internal quotation marks omitted). Lieff has attached several exhibits to its opposition to the Division's motion, including news reports, corporate statements, and a court filing, but its opposition is essentially devoid of any specific explanation of the overlap between the information in these exhibits and in the correspondence and Leniency Letter Lieff seeks.[8] Because Lieff has not met its burden, the Court will not conclude that exemption 7(A) is inapplicable on this ground.

## 2. Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260

---

[8] The only exhibit to which Lieff cites for this purpose is a filing of JP Morgan Chase & Co. with the Securities and Exchange Commission in which JP Morgan Chase & Co. states that it is cooperating with the Division's investigation, the "principal focus" of which "has been the period 2001 to 2005." Decl. of Daniel E. Seltz in Support of Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. L at 4. The Court agrees with the Division's contention that this statement does not indicate the dates on which the Bank sent information to the Division through the Leniency Program and therefore does not provide information that "duplicate[s]" that which Lieff now requests. *Davis*, 968 F.2d at 1279.

10

(D.C. Cir. 1977)). The agency bears the burden of demonstrating that withheld documents contain no reasonably segregable factual information, *see Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1068 (D.C. Cir.1993); *Mead Data*, 566 F.2d at 260, and must do so with "reasonable specificity," *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (citing *Quiñon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996)). The Court has an affirmative duty to consider whether an agency has released all reasonably segregable information. *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007).

The Agency argues that no portion of the correspondence between the Bank and the Division is segregable from the exempt information because the records in their entirety—including each sentence of the correspondence, dates, letterhead, and the number of pages of which each document consists—are exempt from FOIA's disclosure requirement. As to the Leniency Letter, the Division argues that although it could create a redacted version, it could not release such a document because doing so "could seriously undermine the municipal derivatives investigation, as well as the Division's other currently ongoing investigations" by disregarding the Division's policy of keeping leniency applications confidential. Def.'s Mot. for Summ. J. at 20-21.

Lieff responds that the D.C. Circuit's opinion in *Stolt-Nielson Transportation Group Ltd. v. United States*, 534 F.3d 728 (D.C. Cir. 2008), prohibits the Division from categorically refusing to disclose letters describing leniency agreements and requires a more robust segregability analysis than a "conclusory" statement in an affidavit that the Agency has reviewed materials "line-by-line." Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 14.

The Court agrees with the Division as to the correspondence but disagrees as to the Leniency Letter. The Court concludes that the Agency describes in sufficient detail why the disclosure of any portion of the correspondence would provide information properly withheld pursuant to exemption 7(A). The explanation before the Court, set forth in the Agency's declaration, which describes concerns about releasing dates, letterhead, and information about the length of the records in addition to disclosing any of their content, is far more informative than the statement in the agency affidavit addressed in *Stolt-Nielson*. *See Stolt-Nielson Trans. Group*, 534 F.3d at 734 (describing the affidavit as "conclusory" because it stated only that "a Division paralegal had 'reviewed each page line-by-line to assure himself that he was withholding from disclosure only information exempt pursuant to [FOIA]'"). Although "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material" and FOIA requires the disclosure of even apparently useless redacted versions of records, *id.* (quoting *Mead Data*, 566 F.2d at 260), the Division has demonstrated here why there is no segregable portion of the correspondence at issue. Therefore, the Court will grant summary judgment to the Division as to its withholding the correspondence in full.

The Division's justifications regarding the Leniency Letter, however, are unconvincing. The Agency has conceded that it could redact exempt material from the letter. The concern that releasing the letter even without the exempt material would compromise the confidentiality policy on which the Bank and other actual and potential leniency applicants rely is neither logical nor grounded in law. It is uncontested that the Bank itself has already made public the fact that it sought to participate in the Division's Leniency Program. And, in contrast to its assertions regarding the other correspondence, the Division does not contend that disclosure of information

12

in a redacted version of the letter, such as its date or length, could be harmful. Therefore, the motion for summary judgment regarding the Leniency Letter, to the extent the Division seeks to withhold it from disclosure in its entirety, is denied. The letter must be produced with appropriate redactions.

B.      **Correspondence Between the Division and Other Entities**

The Division further argues that it has properly declined to confirm or deny whether any records responsive to the second portion of Lieff's request—correspondence between the Division and any entity other than the Bank regarding a request for leniency in the municipal derivatives investigation—exist. The Agency asserts that informing Lieff whether any responsive records exist would cause the type of harm exemption 7(A) seeks to prevent.[9] In particular, the Division relies on the affidavit it has submitted to show that revealing the existence of another confidential source within the cartel under investigation would lead members of the cartel to attempt to identify and intimidate the leniency applicant and to more carefully hide information. Def.'s Mot. for Summ. J. at 34 (citing Slates Decl. ¶¶ 59-60). Furthermore, the Division maintains that were it to deny the existence of another leniency applicant, it would reveal to the cartel that the Division only has information to which the Bank had access. *Id.* at 35 (citing Slates Decl. ¶ 60).

Lieff responds that the potential harms about which the Division expresses concern are illusory. Specifically, Lieff argues that "[w]ith several government investigations underway and

---

[9]      The Agency also argues that exemption 7(D) applies to this issue. Because the Court agrees that exemption 7(A) permits the withholding of information, it will not address the applicability of exemption 7(D).

major class action lawsuits pending, whatever incentive there is to 'more closely monitor each other's conduct' exists already regardless of this FOIA request." Pl.'s Opp'n at 20.

The Court agrees with the Agency. The D.C. Circuit has held that "an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Gardels v. C.I.A.*, 689 F.2d 1100, 1103 (D.C. Cir. 1982) (citing *Phillippi v. CIA*, 546 F.2d 1009, 1012 (D.C. Cir. 1976); *Phillippi v. CIA*, 655 F.2d 1325, 1330 (D.C. Cir. 1981)). As explained above, an agency may properly invoke exemption 7(A) if it demonstrates "that release of the requested information would reveal 'the size, scope and direction of [the] investigation' and thereby 'allow for the destruction or alteration of relevant evidence, and the fabrication of fraudulent alibis.'" *Boyd*, 475 F.3d at 386 (quoting *Alyeska Pipeline Serv. Co.*, 856 F.2d at 312) (alteration in original). Here, the Agency asserts that if the cartel knew whether the Division had received information relevant to its investigation from a cartel member other than the Bank, the cartel members could make inferences about the substance of the investigation and more easily take action to thwart the Division's efforts in this matter. The Court accepts this reasoning, *see Schlesinger v. CIA*, 591 F. Supp. 60, 64 (D.D.C. 1984) (holding that where an agency affidavit is "clear, specific, and detailed, and there is no evidence in the record contradicting them or demonstrating agency bad faith, then the court need not question [the affidavit's] veracity and must accord [it] substantial weight in its decision" (citing *Taylor v. Dep't of the Army*, 684 F.2d 99, 106-07 (D.C. Cir. 1982); *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980))), and will therefore grant summary judgment to the Division as to this issue.

## IV. CONCLUSION

For the foregoing reasons, it is this 24rd day of March 2010, hereby

**ORDERED** that the Division's motion for summary judgment [#9] is **GRANTED** in part and **DENIED** in part as set forth in this memorandum opinion. The Division is entitled to judgment as to Lieff's request for correspondence regarding requests for leniency between itself and the Bank as well as between itself and any other participant in the municipal derivatives industry, but it is not entitled to judgment as to Lieff's request for the Bank's Leniency Letter. A redacted version of the letter must be produced.

It is further **ORDERED** that by no later than April 9, 2010, the parties shall present a joint case management report, which shall include their proposal regarding any further proceedings or submissions the resolution of which will result in a final ruling in this case. If the parties are not able to agree, each party shall submit its own case management report.

                                               Henry H. Kennedy, Jr.
                                               United States District Court